[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Movant Harold I. Schein ("Schein") seeks to reclaim the sailing vessel "Kriter" ("Kriter") that he allegedly purchased from Newport Offshore, Ltd. ("NOL") on July 3, 1990. NOL was placed in receivership on September 17, 1990 and thereafter on October 19, 1990 PC J Contracting Co., Inc. ("PCJ") agreed to purchase NOL's assets. The purchase was completed by PCJ on November 10, 1990. PCJ objects to Schein's petition to reclaim the Kriter contending that the $50,000 paid by Schein to NOL was not purchase money, but in fact was a loan. The co-receivers are Allan M. Shine ("Shine") and Milton Stanzler ("Stanzler").
Considerable argument by the parties through memoranda is presented as to those facts which would support characterizing the July 3, 1990 transaction as either a sale or a loan. Additionally, certain unsecured creditors have submitted a memorandum regarding the motion to reclaim. Although the court is impressed by the thoroughness and inventiveness of counsel in fashioning such arguments, the court is left with the task of sorting through the evidence of record to determine what truly transpired.
The pertinent parts of this business saga begin on July 3, 1990 when William Hustwit ("Hustwit") and Benedetto A. Cerilli, Jr. ("Cerilli"), President and Secretary respectively of NOL and principal shareholders in NOL's parent corporation, invited Schein to the shipyard to solicit further loans from him. At that time Schein was already a substantial creditor of NOL, having previously extended approximately $900,000 in secured loans.
The court finds that on July 3 Schein refused to loan additional money. It is difficult to believe that Schein, a sophisticated business man, would have loaned an additional $50,000 to a company that was in a most precarious financial position. Moreover, Schein certainly would not have desired to loan further monies to NOL on an unsecured basis and more particularly without any documentation setting forth the terms of the obligation.
Schein in fact intended to enter into an agreement to buy the Kriter for $50,000, subject to a joint venture regarding the completion of repairs to Kriter, the repurchase of it by NOL, Hustwit, or Cerilli, and the division of profits to be realized from the Kriter's chartering or other commercial use and its eventual resale. The court finds the sale of Kriter was conditioned upon the details of the Joint Venture arrangement being finalized through written agreement to be duly executed by the parties. Cerilli's testimony in that regard is particularly telltale. Cerilli testified that the sale of Kriter was not the only agreement with Schein regarding the Kriter. It is apparent from Cerilli's testimony that the "buy-back" arrangement was to be a condition of the sale. Cerilli testified: "We talked about conditions and nothing was put in writing, and I was going to leave that up to Hustwit and (Schein) to formalize or I believe Mittleman, Richard Mittleman, or one of the attorneys would do that." Although Cerilli acknowledged that he wanted to give Schein some evidence that he owned the boat — i.e. the bill of sale — it is clear to the court when evaluating the evidence as a whole that the sale was subject to completion and execution of the "buy-back" agreement.
On July 18, 1990 Mittleman, Schein's attorney, forwarded draft documents to Hustwit which characterized the July 3rd transaction as a sale with Schein being permitted to effect a resale of Kriter to Hustwit, Cerilli, or NOL for $75,000 and a further arrangement regarding distribution of profits from chartering or commercial use and eventual resale of Kriter. That agreement, however, was never fully executed. Hustwit and NOL failed to execute the same. For the reasons discussed herein, the court rejects the self-serving characterization in the preamble to said agreement that a sale of the Kriter had already occurred on July 3, 1990.
Schein intended to purchase the vessel, but only with the further provisions to be established under the joint venture agreement. Such an arrangement would be the only arrangement that would make business sense to Schein. After all, he was in the business of loaning money, not purchasing, repairing, and arranging for the chartering and resale of a luxury yacht. Without NOL along for the venture to effect the repairs and to enhance the potential return on his investment of $50,000, his purchase of the Kriter would defy logic. Nor, given Schein's willingness to embark upon the joint venture with NOL, Hustwit, and Cerilli, would it make sense for NOL to sell the vessel without simultaneously establishing, documenting, and executing the joint venture agreement. Although NOL was desperate for cash, Hustwit and Cerilli would not have agreed to a sale of the Kriter without finalizing the terms of the joint venture agreement which would preserve NOL's, Hustwit's and/or Cerilli's participation in a further financial return on the Kriter.
The court also finds that Schein did not inform PCJ that he owned the Kriter before PCJ agreed to purchase NOL's assets. If such communication had been made, PCJ most certainly would have addressed the issue prior to making an offer which was accepted by the receivers and approved by the court. The court's view that no such communication occurred is buttressed by the court's belief and finding that Schein both individually and through his attorney failed to notify either receiver on or before October 19, 1990 of its claim of ownership. It is unimaginable that the receivers would have agreed on October 19, 1990 to the sale of NOL's assets to PCJ (under the belief that the Kriter was included therein) if they had been advised of a claim. The court believes Stanzler's testimony that he and Shine had not been advised of such a claim on or before October 19, 1990. The court also notes Schein's explanation that such claim was not communicated on September 17, 1990 at a meeting at the shipyard to avoid embarrassment of Schein in the eyes of his accountant that would arise from Schein having embarked upon such a transaction at all. For whatever reason, that vital information regarding a claim of ownership was intentionally withheld by Schein and his agents. The court finds that at the time PCJ agreed to purchase NOL's assets that the receiver and PCJ and its agent believed that the Kriter was one of NOL's assets. The Court also finds that Schein and his agent, although presented with opportunities, did nothing prior to or on October 19 to assert any claim of ownership of the Kriter to either receiver or to PCJ.
The court finds that the parties intended to enter into certain agreements whereby the Kriter would be sold by NOL to Schein and simultaneously therewith NOL, Cerilli, Hustwit and Schein would agree to the terms of a joint venture regarding the repurchase of Kriter and its subsequent resale as outlined above. The court further finds, however, that the parties never arrived at a meeting of the minds as to the terms that would attach to sale and joint venture. Accordingly, an agreement was never reached, including agreement as to the sale of the vessel. Not surprisingly, the sale of the Kriter was therefore never completed. The fact that a bill of sale was provided to Schein by itself does not persuade the court that in fact a sale was completed. The court finds that it was given with the expectation and implied condition that in fact a joint venture agreement would be finalized and executed. Accordingly, Hustwit continued to declare that NOL owned Kriter as late as October 12, 1990. When the transaction unravelled with failure of the parties to come to terms with respect to the joint venture, the sale was never completed. Corporate ratification of the transaction did not occur. Documentation of the Kriter in Schein's name was never completed.
Schein through his attorney argues that negotiations by PCJ subsequent to its agreement to purchase of NOL's assets evidence that PCJ acknowledged Schein's ownership of the Kriter. The court does not draw that conclusion. When PCJ offered to settle Schein's claim of ownership, PCJ was also attempting to secure financing from Schein with respect to its purchase of NOL's assets. Accordingly, it is not unlikely that PCJ would endeavor to compromise a claim — even if PCJ viewed it to be without merit — to secure another more significant objective.
It is no wonder that Schein attempted to derive some protection for the $50,000.00 advanced on July 3, 1990 by characterizing the $50,000 as a loan in his checkbook. However, as previously noted, the court finds that the $50,000 was not in fact a loan. Rather, it was the advancement of the purchase price for the Kriter regarding a potential transaction that was never reduced to agreement. Unfortunately for Schein, he advanced the $50,000 to NOL under pressure from Hustwit and Cerilli before the terms of the sale and joint venture transaction were completed, documented, and executed.
In light of the court's finding as above set forth, PCJ's allegations of a fraudulent transfer are rejected by the court in that a transfer never occurred.
Based on the evidence as analyzed herein, the court does in fact find that NOL did in fact own the Kriter and that said property was properly transferred to PCJ when it closed on the purchase of NOL's assets. The motion to reclaim is denied. Counsel is directed to submit an order.